We have five cases on the calendar this morning. A contract case from the Court of Federal Claims, three government employee cases, two of which are submitted in the briefs and will not be argued, and a patent case from the District Court. The first case is the claims case 2011-5092, Scott Timber v. United States. Ms. Lynch. Good morning, Your Honors, and may it please the Court. This case involves a finding by the trial court that a party can breach a contract as being awarded, a misapplication of the implied duty of good faith and fair dealing, a decision to award expectancy damages, suffered by a party that was not the government's contracting partner, and finally, a decision to provide Scott Timber with a windfall by failing to deduct all of the profits actually earned on the timber harvested in the post-suspension period on all of these three timber sale contracts. I'm not sure that the Court of Federal Claims decision rests entirely as to liability on the covenant of good faith and fair dealing. I think that's probably an accurate characterization as to the pre-award finding of liability. It may be true also with respect to the delays in doing the studies that were required by the injunction that was entered, but it seems to me that to the extent that the Court of Federal Claims awarded damages or found liability based on the failure to lift the suspension after the expiration of the injunctions, that that's not a finding based on the covenant of good faith and fair dealing, but based on a violation of the express provisions of the contract. Could you address that? Yes, Your Honor, certainly. The injunction was only lifted pursuant to a stipulated agreement that was entered by court order, and the court order indicated that the forest service would conduct the required surveys. So there was a court order that required the forest service to continue conducting those surveys, and the court retained jurisdiction should the environmental plaintiff believe that the forest service was not conducting those surveys properly. I understand that, but I thought that you had agreed that as of August 2001 that the surveys had been completed and that the justification for delaying lifting the suspension after that related to this other pending litigation in which no injunction may have been issued. That is only the case for two of the three timber sales, Your Honor, the jigsaw and whitebird timber sales. Because with respect to pig out, there was still an injunction in the Heartland litigation. They were continuing to complete the surveys required by the ONRC action litigation. Yeah, that's Heartland, right? No, it's the ONRC action resources case in the Western District of Oregon. But with respect to the other two parcels, there was no injunction. After August 2001, the delay was the result of a concern that there might be an injunction in another case. Am I correct about that? Yes, Your Honor, and it's because another environmental case challenged the underlying environmental assessment. That is the Heartland case, Your Honor, challenged the underlying environmental assessment for the jigsaw and whitebird timber sales. And so the Forest Service, pursuant to 6.01, because they believed that the jigsaw and whitebird timber sales, because they were dependent upon the environmental assessment that were being challenged in the separate case, they just continued the injunction. So the problem is, where did the contract allow you to do a suspension based on a concern about possible litigation where there was no injunction? On page A67 of the appendix, Your Honor, the same provision that we have been referencing, CT 6.01, there are other subsections other than the one that just provides for suspension pursuant to court order. So how does that justify continuing the suspension because of other litigation? Because if that other litigation decided that there were concerns relating to the environmental work, then that could apply in that instance. Ms. Lynch, aren't you stuck with the fact findings that Scott Timber was never told that the contracts were the target of the litigation? Well, Your Honor, we... That they'd been diligent in keeping an eye on things? We are not challenging any of the factual findings made by the trial court. However, the parties in their agreement, they anticipated that litigation is a fact of life and litigation often affects timber sale contracts. So the parties bargained for, on the Forest Service's behalf, the right to suspend, and on the purchaser's behalf, the right to recover increased out-of-pocket expenses and to receive a contract term adjustment. In this case, exactly what occurred was what was anticipated by this provision. This would seem to be similar to precision in the sense that the contention is that the injunction effectively could have been lifted earlier if the Forest Service had been more diligent. Yes, Your Honor, and according to precision pine, the proper standard for determining that is whether the Forest Service's actions were designed to specifically target a benefit guaranteed by the contract, specifically designed to reappropriate a benefit guaranteed by the contract. And as this court found in precision pine, there is no right to a harvesting timber at a particular time. That right is expressly qualified by the contract. Ultimately, here, Scott Timber realized the benefit of its bargain. Scott Timber harvested all of the timber contemplated by the contract, and the Forest Service should have received the right that it bargained for, the right to suspend those contracts pursuant to the clause. How many pages was this contract? It was a lengthy contract, Your Honor. And you're basically relying on one sentence plus three or four words. That is correct. That is correct. Boilerplate? Well, as this court has recognized, that provision does give the Forest Service the express right. The contract is a contract. Exactly, Your Honor. And relating to the duration of the suspension, this court has made plain, the trial court, excuse me, made plain the standard that it used for its decision. In all contracts, each party owes a common law covenant of good faith and fair dealing to its contracting partner. As we've mentioned, this court has articulated the appropriate test for determining a breach of the implied duty of good faith and fair dealing. And that, again, that test is whether or not the government action is specifically targeted to reappropriate a benefit designed, guaranteed by the contract. And because Scott Timber should not have been expecting to harvest the timber at any particular time, we respectfully request that this court enforce that provision and reverse the trial court's decision. Turning to the damages aspect of the decision, in an unprecedented aspect of that decision, the trial court awarded to Scott expectancy damages suffered by Roseburg Forest Products, a wholly separate corporation, in direct contravention of this court. They were sister corporations, though, weren't they? And they had a contract? They were sister corporations, Your Honor. And again, we're not challenging the court's finding that there was an agreement between the two companies. But even in spite of that, this court's precedent in poly-America instructs that a corporation must accept the burdens of its corporate structure along with the benefits. And despite recognizing this court's precedent, the trial court relied upon a unique application of the Severn Doctrine to award Scott the expectancy damages suffered by a sister corporation. The sister corporation wasn't a subcontractor with respect to the harvesting here, right? That is correct, Your Honor. And this timber sale contract in no way requires the processing of the timber. The provision of the contract that the trial court relied upon to determine that there was a processing requirement is nothing more than a prohibition against export. That the party who harvests the timber will not export unprocessed timber. So that the contract extracts that promise from the party and then simply ensures that if that party sells the timber to another party, they must extract that same promise. At that point, the purchaser's duties relating to the export provision are discharged and certainly it is not required to. To harvest and then process the timber as part of contract performance. Finally, the trial court failed to deduct all of the profits that were earned on the trees harvested from these timber sales, which provides Scott and its sister corporation, Roseburg, for its products with a windfall. Scott profited completely and again obtained the benefit of its bargain because it harvested all of the trees contemplated by the contract. The government is entitled to a credit for every dollar of profit that Scott actually earned and Roseburg actually earned on the trees in the post suspension period. Of course, if we find 21 liability, the damages issues go away. That is correct, Your Honor. If I may, I would like to save my remaining time for rebuttal. Thank you. Mr. Saltman. Scott Timber. Thank you, Your Honor. May it please the court. There was no windfall in this case. You seem to have some difficulty in reconciling the earlier Scott Timber case and the precision case. We do, Your Honor. It seems to me that there is a pretty clear line between the two of them, that the Scott Timber case was talking about possible breach of an express provision of the contract, whereas precision is saying that if you're relying on something other than an express provision of the contract, based on the covenant of good faith and fair dealing, there has to be a finding of targeting. Why isn't that the distinction between the two cases? I don't think—I guess we're reading them—but there is that distinction, Your Honor. I think that both of them are dealing with the implied duties. And in Scott, they were following the traditional line that one judges whether or not there has been a breach of those implied duties by the standard of reasonableness. Precision Pine took a different tact in taking from the Sovereign Act defense required targeting and the reappropriation of a benefit. And I think, as we say in our papers, it did not follow through with that, and it is inconsistent with the whole concept in Windstar laying out for these— To the extent that there was no injunction. Well, Your Honor— Do not interrupt me, please. But to the extent that there was an injunction and that the claim is that the injunction should have been lifted earlier because the Forest Service should have been more diligent in doing the surveys, that's just like Precision Pine, isn't it? I think that, Your Honor, it is just like both of them. But going to Your Honor's point, there was no injunction after December of 1999. At that point, the government and the environmentalists got together, made an agreement that they would halt performance of this sale and a few others, and also agreed that the results of the surveys as they were being— But you treated that agreement as being effectively a continuation of an injunctive obligation. You said that we have done so, Your Honor? Yeah, I thought so. No, no, we have not, Your Honor. We do not believe that it's a continuation of the injunction. We believe that it's a separate agreement that the government entered into. It was not blessed by the district court, nor did they even retain jurisdiction to review it. Where do you make that argument in your brief? At some point. I'm not sure I have the page, Your Honor, but I can get that for you. We did make that point. But whether or not you made the point, why where there's an injunction and then an agreement between the parties as to what's required of them, why shouldn't that be treated as effectively a continuation of the injunction? Well, because one— Please don't. I'm sorry, Your Honor. A continuation of the injunction that comes within the contract provision. Well, because one, Your Honor, you are asking a court to make a decision on how long the injunction should stay in place. And when you do it by agreement thereafter, you're changing the whole parameter. It's not judicial decision. It is whatever the bargaining powers of the two parties are. I think that it is not, therefore, a mere continuation of the injunction. The court never, for example, indicated that the environmentalists should get a chance to review the quality of the surveys that were being done and veto any of the surveys that they didn't like and continue the suspension of the contract while all this takes place. If you will, that under an injunction would have been the purview of the district court, not the environmental plaintiffs. Mr. Sultan, why aren't you stuck with precision pine? There was certainly this court order provision in the agreement, and why does it not settle the case? Well, Your Honor, we do not believe that precision pine is consistent with SCOT 1, as Your Honor knows from our papers. Exactly in both cases you had C601, both in the SCOT case and in precision pine. As such, we believe that they are directly in opposition to each other, and as we say in our papers, a number of other scholars have indicated the same, Professor Nash among others. As such, assuming that they are correct, then the rule of this court is that the precedent that is first in time by the panel would govern. Hence, we don't think that we are bound by precision pine. Of course, if we can square SCOT in precision, then your whole argument goes away. That's a different story, yes, Your Honor. But, Your Honor, even if precision pine were to apply, our argument is that we do meet the standard. The government says the trial court findings of unreasonableness are irrelevant. Well, precision pine requires targeting. There is no showing of targeting here, right? We believe that it was targeted, Your Honor, in the sense of the government wanted to have a contractor at the table, so to speak, during negotiations or even in the argument of the ONC action litigation. Targeting is being used in these cases in the sense of taking something back, is it not? Well, I think that they were targeting them to, they knew that an injunction was looming large. Wait a minute now. Your client is a timber company in the Pacific Northwest. Yes. It's obviously done business and knows these contracts because it's litigated these contracts before. Yes, Your Honor. Yes. It's aware of the, pardon me, environment in the Northwest of all the litigation that's going on. Yes, Your Honor. What they weren't aware of is that there was a secret list of sales. They believed that from everything they were hearing from the Forest Service that these sales were not in dire jeopardy of an immediate injunction under ONCR action. But they knew there was a warning about litigation pending, right? Isn't that in the record? I mean, it looks to me the opposite way. There's a statement made at the bid opening, Your Honor. Yes. But there was another statement made in the award letter. It didn't say exactly. You can say that it's free and clear. But the indication was that the problem that had delayed award for about eight months had in fact passed and that now the award would be made and that as the court found that the plaintiff could proceed in the normal course of things. No, but there certainly was a representation that the award could proceed, but where was the representation that they could proceed under the contract without a risk of a suspension resulting from this litigation? Of course there was a recognition. There has to be a recognition that there is this generalized, as with any government contract, that the government can at any point suspend an operation. They can terminate. That exists with regard to every federal contract. And it certainly applied here. What was different here is that the government knew but did not tell Scott that your sale, these three sales, are on a secret list of sales that the environmentalists want to attack. That's different. That's not true of every contract. They also knew that their defense was viewed by the assistant attorney general as nonsense. They didn't tell that to Scott on the day that Scott entered into the contract. If Scott had known those two things, they would not have signed the contract. Why isn't the fact that you knew about the litigation a possibility of a suspension sufficient to put you on notice to inquire further? They did. They did, Your Honor. And the record shows that continuously, through the process between the date of bidding and the date of award, that Scott diligently asked the Forest Service, where do things stand on getting these contracts going? But the Forest Service never told them that there was going to be a problem. No, but that's different from asking about what's the status of the litigation. Did they ask about the status of the litigation? Of this particular litigation? Of all litigations that might affect the contract. They did ask if these contracts could go forward. Did they say down specifically what's the status of ONC action, what's the status of the XYZ case? No, they did not, Your Honor. But there's a difference between award and performance, isn't there? I'm sorry, Your Honor? There's a difference between award and performance. Yes, but as the court found, and unless Your Honor's finding it clearly erroneous, Scott had a reasonable basis to believe that they could go forward in a normal course of things. That the litigation that was supposedly holding up the award had been resolved sufficiently so that Scott could proceed. That's what the judge found below, Your Honor. But he makes that finding under an analysis of Scott in precision and what they say are the requirements. Now, he made that finding as a finding of fact. He did think that the rule to be applied was Scott. He didn't address precision at all, right? He did not. That's a problem. Well, precision came up, Your Honor. Before we went into the damage phase of this case, precision came up. The government said they were even contemplating filing a motion for reconsideration based on precision point. They never did. We went through the whole damage phase. Only after the damages were awarded do we get the government's argument that precision pine trumps everything. Well, what are you suggesting? They waived reliance on precision pine? Well, Your Honor, there are cases, and we've cited them in our papers, that give the discretion to this court to say that if they waited that long to raise this issue, that they may have in fact waived it. I'm not aware of any case that says that you waive reliance on a particular authority by failing to raise it at a particular time. We constantly discover cases in the course of briefing and argument in our own deliberations that we hadn't realized. Well, I realize that, Your Honor. The issue has to be raised. They raised the issue, but they don't have to raise all the authority that they're relying on. And, of course, in the course of that, Judge Leto said that he did not believe that precision pine had any implications at all. It was considered. I'm sorry? It was considered. In that sense, it was considered. Yes, Your Honor. Your Honor, you indicated that after August of 2001, why did the injunction continue? And I would say that that was improper at that point, if not well before that. We're talking with respect to the two parcels. With respect to the pig-out parcel, there was a continuing injunction. I don't believe there was a continuing injunction on any of them, Your Honor. But to the extent that there was no injunction, there also were no required determinations made under C-601, so that for the government to have continued the injunction at that point was improper under those clauses. I'm not sure I understand what you're saying. Your Honor, at page 867, in order for a suspension to be made in the manner that the government suggested with regard to August of 2001, C-601, subparagraph C, says that upon a determination of the appropriate regional forester that conditions exist on this sale that are the same in some other sale, they may suspend. There was no such appropriate determination of an appropriate regional forester. As such, there would have been no way that they could have invoked C-601 properly at that point. Do you have a final conclusory point, Mr. Stone? Yes, Your Honor. I want to make one point about no windfall. What we have here is really no different, but if you take the situation of a trial lawyer, he's about ready to go to trial, and for some reason the trial gets postponed, and it gets postponed for a year. He now has a hole in his pipeline. He says, I was planning to do that trial next week. A year comes later, he does the trial, and at that point, if he didn't have this postponed trial, he could have done some other work. He's lost a week's worth of work. That's the same situation as we have with Scott Timber and Roseburg. The Roseburg-Scott Timber best efforts contract didn't make them a subcontractor with respect to Scott's contract with the government, did it? Yes, it did, Your Honor. How so? Because their contract was that Roseburg would come out every year, and this is in the findings of fact, would say how much timber it needs for its mills. Scott would go and acquire it, transfer that, and sell that. So it was a general contract that wasn't directed to these particular parcels. No, it wasn't directed to these parcels, but Scott was to go out, secure the timber from federal sources, from private sources, and then deliver it to Roseburg. Well, how did Scott breach a best efforts contract by abiding by the suspensions imposed by the Forest Service? Actually, I don't think it is a best efforts contract, Your Honor. I think that's the government's characterization. Well, I think that's what the testimony was. Let's assume that I'm correct about that, okay? But it's a best efforts contract. How is there a breach of a best efforts contract here? Well, if it were a best efforts contract, Your Honor may have a point, but as I said, I don't believe that it was, and I don't believe the characterization by the court ultimately was that it was. The last thing is that the timber that Scott acquired was transferred to Roseburg to be domestically processed because, as the prospectus says, quote, the contract requires domestic processing of the included timber. It had to be processed domestically. Roseburg Forest Products was the subcontractor that did that requirement. Thank you, Mr. Hoffman. Thank you, Your Honor. Ms. Lynch, Mr. Hoffman says precision pine was inconsistent with prior case. Is that correct? That is not correct, Your Honor. Certainly both Scott One and precision pine are consistent and can be reconciled. The precision pine panel applied the duty of good faith and fair dealing, as this court recognized. The Scott panel did not deal with the issue of good faith and fair dealing at all. The precision pine decision also cited Scott One repeatedly and favorably and indicated that the precision pine decision was in line and consistent with the Scott decision. For those reasons, we certainly believe that the two cases are consistent. Additionally, the case that we have here is factually much more similar to the precision pine case than the Scott One case. In some respects, it is. In some respects, it isn't. I think to the extent that Scott and the Court of Federal Claims are relying on the covenant of good faith and fair dealing, you're correct that precision pine says to find a breach of that covenant, you have to find targeting. There's no evidence of targeting here. But doesn't precision pine leave open the possibility that if there's a breach of the express provision of the contract, that there can be liability without some showing of targeting? I mean, if they're not relying on the covenant, you don't have to show targeting, right? That is correct, Your Honor. So why to the extent here that there's a finding that they continue the suspensions based on the mere pendency of litigation as opposed to the entry of an injunction, why isn't that an express contract problem as opposed to a covenant problem? Well, that would return to the Scott-Timber reasonableness, where there is no express provision that speaks to it. It would look at a reasonableness test. And so long as the government is conducting its survey requirements and things like that, we would respectfully request that a remand at that point would be necessary to make additional factual determinations to find out the trial court failed to make those specific determinations relating to the extended duration of the suspension, simply that the Forest Service could reasonably have lifted the suspension earlier. Ms. Lynch, what about Mr. Soltman's statement that there was no determination of an appropriate regional forester? Yes, Your Honor, that is not the subsection of Provision CT 6.01 that we're relying on. We're relying on subsection A, which does not require any such determination. Good. And additionally, just to go to the agreement that the Forest Service entered into in December of 1999, on page A216 of the appendix is the court order entering that opinion, and it specifically states that the court would retain jurisdiction subject to any material breach of that case. Ultimately, Your Honor, Scott-Timber realized the benefit that it bargained for. Retained jurisdiction in case of a material breach of the settlement agreement? Of the settlement agreement, yes, Your Honor. Ultimately, Scott-Timber realized the benefit of its bargain, harvested all of the timber pursuant to these timber sales contracts, and based on the reasons we've discussed and the reasons outlined in our brief, we respectfully request this court reverse the trial court's decision and enter judgment in favor of the United States. Thank you. Ms. Lynch will take the case under revising. Your Honor, if I might, Judge Dygan asked me at what page of our pleadings a certain point appeared. It is at page 23. Thank you very much.